**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joel Eric TORNABENE, Defendant-Appellant.**

No. 80–1711.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 14, 1982.

Decided Sept. 16, 1982.

Rehearing Denied Nov. 1, 1982.

Dennis Roberts, Oakland, Cal., for defendant-appellant.

Peter Robinson, Asst. U. S. Atty., San Francisco, Cal., argued, for plaintiff-appellee; Eric Swenson, Asst. U. S. Atty., San Francisco, Cal., on brief.

Before SNEED and TANG, Circuit Judges, and NIELSEN,* District Judge.

TANG, Circuit Judge:

Tornabene appeals his conviction for distribution of Lysergic Acid Diethylamide (LSD) in violation of 21 U.S.C. § 841(a)(1). Tornabene was convicted on the basis of one sale of LSD to government agents. The sale was arranged by an informant. Tornabene's defense at trial was entrapment.

* Honorable Leland C. Nielsen, United States District Judge for the Southern District of California, sitting by designation.

On appeal, Tornabene asserts the following errors: (1) The Government failed to use reasonable efforts to produce the informant; (2) The trial court abused its discretion in denying Tornabene's motions for a continuance of the trial date; (3) The government's pre-indictment delay of over 18 months requires dismissal of the indictment; (4) The trial court erred in instructing the jury; (5) The trial court erred in admitting a partial transcript of tape-recorded telephone conversations into evidence.

Tornabene was indicted June 4, 1980. The basis for Tornabene's indictment and conviction was a drug transaction that took place November 21, 1978, some 18 months before the indictment, when two Drug Enforcement Administration (DEA) agents—Shoquist and Garner—accompanied the informant to Tornabene's San Francisco residence. Both agents and the informant lived in San Antonio, Texas at the time. The informant, who had known Tornabene for several years, introduced the agents to Tornabene. The informant arranged for Tornabene to sell approximately 5,000 units of LSD to the agents for $7,000. The informant witnessed the transaction. There were several other people in the house at the time of the transaction.

On July 11, 1980, Judge William Sweigert considered Tornabene's request for production of the name and address and present whereabouts of the informant. Judge Sweigert ordered the government to bring the informant to San Francisco within two weeks for Tornabene's attorney to interview him to determine whether the informant would be helpful to Tornabene's entrapment defense. Because the government agreed to produce the informant himself, the government was not required to produce the informant's name and address.

The government failed to produce the informant within the two week period, and a second hearing was held on July 28, 1980. The government represented to the court that efforts had been made, unsuccessfully, to locate the informant, but that "[we] still expect to be able to find him." Trial, which had been set for August 11, 1980, was postponed until August 26, 1980 at the request of the government. It appeared at the hearing that the defendant had some idea of who the informant might be, that the defendant and the possible informant had known each other about six years, but the defendant did not know the informant's present whereabouts. The court pursued the possibility of defendant's calling the informant and asked the government for the name of the informant. The government attorney responded that he only had the informant's number given in DEA reports, but assured the court that efforts to contact the informant would continue. The informant was never produced.

Two days before trial on Monday, August 25, 1980, the trial court held a hearing to determine whether the government had made reasonable efforts to produce the informant. This hearing was before Judge Walter Craig, serving as a visiting Judge in the Northern District of California. By the time of the hearing the identity of the informant—Michael Tease—was known to the defense as well as to the government attorneys. At the time of the August 25 hearing, however, the government had not disclosed to the defense attorney a phone number or home or work address for the informant Tease. Independent efforts by the defense to find the information or the informant himself had been unsuccessful.

At the August 25 hearing the court received testimony from San Antonio DEA agents Garner and Shoquist. Their testimony revealed that on July 15 they learned of the court's July 11 order to produce the informant. On July 17 or 18 the agents met with Tease in San Antonio, Texas. Mr. Shoquist testified that they told Tease that he might need to go to San Francisco, that "he was going to have to make himself available, and it would be up to him whether or not he wanted to talk to defense counsel." Mr. Garner testified that one of agents told Tease that whether Tease would have to talk to the defense attorney would be "at his discretion." They did not tell him of the court order.

The agents in San Antonio, Texas did not receive the subpoena from the U. S. Attorney until July 24, one day before the expiration of the two week period first set by Judge Sweigert for production of the informant. Their next communication with Tease was on July 28, 1980 when Tease himself called Agent Shoquist. Tease told Shoquist that he would be moving soon and that his home telephone would be disconnected. Shoquist did not ask for Tease's new address. That July 28 conversation was the last time either Garner or Shoquist spoke with Tease before the August 25 hearing.

Shoquist testified that when Tease failed to show up for his scheduled meeting with Shoquist on July 29, and did not contact Shoquist the day after, Shoquist tried to call Tease at home on or about August 1, 1980. Shoquist testified that Tease's phone had been disconnected, that no forwarding number was given, and that his secretary had confirmed these facts with the telephone company.

Garner and Shoquist testified that they tried several times to phone Tease at his nightclub, that they drove by the nightclub, but not seeing his car, never went into the club. The two agents left San Antonio, Texas on August 10 for Miami, Florida and returned August 23. During that time no other DEA agents attempted to reach Tease.

At the conclusion of the August 25 hearing, the trial court found that the government had "exercised reasonable efforts" to locate the informant and ordered trial to begin.

On Tuesday, August 26, 1980, the day after the hearing and the day before trial, defense attorney Roberts called U. S. Attorney Swenson and asked for the informant's home phone, since it was clear from Monday's hearing that the government was not going to produce the informant in person. Until this time, the defense had no recent phone number or address for Tease. U. S. Attorney Swenson gave Tease's old home number to Roberts. When Roberts called the number, he got a recording giving a new number. Roberts dialed that number and immediately reached the informant, Michael Tease. Roberts and Tease had a lengthy conversation. Much of what Tease told Roberts contradicted the agents' testimony about their attempts to reach or find Tease. The next morning, the morning of trial, Roberts called the San Antonio phone company, whose representative told him that Tease's old number had not been disconnected until August 13, and that the new number had been put into operation at Tease's new residence the same day. The computerized records showed service to the old number until August 13, and showed that the order to disconnect the old number had been called in August 12, 1980. This information was apparently in direct conflict with testimony of Agent Shoquist at the August 25 hearing when Shoquist testified that Tease's home phone had been disconnected August 1 when Shoquist tried to call Tease at home.

On the morning of trial, August 27, 1980, Roberts informed the district court of the information he had obtained from Tease himself and from the phone company. The court indicated that he doubted the accuracy of Roberts' information concerning such quick phone changeover service and denied the motion for dismissal for failure to produce the informant. He also denied Tornabene's motion for a two day continuance so that the defense could get Mr. Tease from San Antonio, Texas to San Francisco, California to testify.

*Reasonableness of Government Efforts to Produce Informant*

██ Tornabene argues that the government failed to use reasonable efforts to obtain the informant. The government must use "reasonable efforts to produce a government informant whose presence has been properly requested by the defendant." *United States v. Hart*, 546 F.2d 798, 799 (9th Cir. 1976) (*en banc*), *cert. denied sub nom. Robles v. United States*, 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 571 (1977). Whether the government has made a "reasonable effort" to produce the informant is to be determined "as of the time the

government is exerting its efforts to obtain the attendance of the witness, taking into consideration the background of performance and attitude of the desired witness as of that time." *Id.* at 801.

■ Because the question of "reasonable efforts" is one of fact, we will sustain the trial court's finding unless it is clearly erroneous. *Id.*

■ In this case a total of four hearings were held by two different trial judges on the question of the government's reasonable efforts to produce the informant. Judge Craig, who was not present at the first two hearings, was required to make the ultimate decision on the reasonableness of the government's efforts and the granting of a continuance. In finding that the government had made reasonable efforts to produce the informant, Judge Craig apparently believed the DEA agents' testimony concerning their attempts to reach Tease. Even believing the agents' testimony, we question the finding that the government made reasonable efforts. When the conflicting testimony of defense counsel on the morning of trial is considered as well, we are compelled to find clearly erroneous the conclusion that the government had made reasonable efforts to produce the informant.

In ruling on the reasonableness of the government's efforts, Judge Craig may not have been completely aware of the entire history of the case. After reviewing the entire record, however, we must express our displeasure at the government's efforts. Whether through neglect or intentional avoidance, the government's actions, taken as a whole, do not reflect efforts which were designed to produce the informant.

On July 11, Judge Sweigert determined that the informant, because present at the sale, "was a first class witness" and ordered his production in San Francisco by July 25. The DEA agents in San Antonio did not even receive the subpoena until July 24, one day before the expiration of the two-week period set for the informant's production. Although aware of the court order, the

DEA agents during their meeting with Tease on July 17 or 18, failed to tell him that there was a court order requiring the government to make him available for an interview with the defense attorney. It is true that Tease may have expressed reluctance to testify; thus the agent's failure to tell Tease of the court order before they had received the subpoena may have been reasonable. But in view of Tease's alleged reluctance to testify, the agents should have been more vigilant, not less, of Tease's whereabouts. *See Hart*, 546 F.2d at 801. The record reflect no such vigilance; rather it reflects at best only haphazard attempts to find him.

Because the district court's finding that the government made reasonable efforts to produce the informant was clearly erroneous, we reverse and remand the case for proceedings consistent with this opinion.

Tornabene argues that the indictment should be dismissed because the failure to produce the informant in this case is tantamount to failure to identify the informant, citing *Roviaro v. United States*, 353 U.S. 53, 65 n. 15, 77 S.Ct. 623, 630 n.15, 1 L.Ed.2d 639 (1957). We disagree. We feel that the proper remedy for the failure in this case is a new trial. *Velarde-Villarreal v. United States*, 354 F.2d 9, 13 (9th Cir. 1965).

Because we reverse and remand on this issue, we need not decide the propriety of the district court's denial of a continuance.

*Pre-Indictment Delay*

■ Tornabene sold LSD to the DEA agents in November, 1978, some 18 months before he was indicted on June 4, 1980. Tornabene's motion to dismiss on the grounds of pre-indictment delay were denied by the trial court. Tornabene argues that this was error.

In deciding this question, we are guided by our decision in *U. S. v. Mays*, 549 F.2d 670 (9th Cir. 1977). There we held that the proper standard for determining whether pre-indictment delay required dismissal included a balancing of three factors: actual prejudice to the defendant, to be proved by defendant; length of delay; and the government's reason for the delay. The

last two factors must be considered together. *Id.* at 677–78. We uphold the trial court's determination unless clearly erroneous. *See id.* at 678.

Judge Craig denied the motion to dismiss. The denial of Tornabene's motion to dismiss was not clearly erroneous. The record does not reveal any intentional or negligent delay for improper purposes by the government. Government agents were attempting during most of the interim, albeit unsuccessfully, to arrange further LSD sales by Tornabene to government agents. This "ongoing investigation" is a legitimate reason for delay. *See U. S. v. Walker*, 601 F.2d 1051, 1055–56 (9th Cir. 1979).

*Requested Entrapment Instruction*

■ Tornabene argues that the district court erred in refusing to provide the jury with an instruction that reads, "The burden is on the government to prove beyond a reasonable doubt that the defendant was not entrapped." This instruction reflects a recent amendment of *Devitt and Blackmar* to conform with *United States v. Johnson*, 590 F.2d 250 (7th Cir. 1979) *rehearing en banc* 605 F.2d 1025, *cert. denied*, 444 U.S. 1033, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980).

The instructions on entrapment that were given adequately informed the jury that the government had to prove lack of entrapment beyond a reasonable doubt. The instructions on entrapment in this case are virtually identical to those we approved in *United States v. Pico-Zazueta*, 564 F.2d 1367, 1370 n.7, (9th Cir. 1977), *cert. denied*, 435 U.S. 946, 98 S.Ct. 1531, 55 L.Ed.2d 544 (1978), and *United States v. Reynoso-Ulloa*, 548 F.2d 1329, 1339–40 (9th Cir. 1977), *cert. denied*, 436 U.S. 926, 98 S.Ct. 2820, 56 L.Ed.2d 769 (1978). There was no error in the refusal to use Tornabene's requested instruction.

*Partial Transcript of Tape Recording*

Tornabene cites as error the ruling of the district court admitting into evidence a partial transcript of a tape recording without insuring that the jury listened to the tape recording itself.

The government offered into evidence a tape recording of nine telephone calls in which Agent Shoquist attempted to reach Tornabene. In only three of the calls did Shoquist actually reach Tornabene—the other calls consisted of requests by Shoquist that Tornabene call him. Transcripts of two conversations between Shoquist and Tornabene were admitted over Tornabene's objection. Tornabene's objection was overruled subject to the playing of the tape.

Toward the end of trial, Tornabene requested that the jury be allowed to hear the entire tape so that they could hear the actual conversations between Shoquist and Tornabene. Tornabene argues that had they heard the actual tape recording of the conversations, the jury members would have perceived Tornabene's reluctance to deal with Shoquist and his attempts to evade Shoquist's requests. The tape was never played.

■ Tornabene correctly argues that as a general proposition, transcripts are appropriately used as an aid in listening to the tape recording itself, which constitutes actual evidence of the conversations. *United States v. Turner*, 528 F.2d 143, 167 (9th Cir. 1975), *cert. denied sub nom. Hackett v. United States*, 429 U.S. 837, 97 S.Ct. 105, 50 L.Ed.2d 103 (1976).

■ No error was committed here. The transcripts of the conversations were admittedly accurate. The trial court stated that the jury could listen to the tape if they wished, and if they so requested, a tape recorder would be made available. No limiting instructions were requested, and none were given. In the absence of a request, failure of the trial court to give a limiting instruction was not plain error. *United States v. McLennan*, 563 F.2d 943, 947–48 (9th Cir. 1977), *cert. denied* 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 60 (1978).

The judgment is REVERSED and the case REMANDED for proceedings consistent with this opinion.