**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Robert Leo MORAN, Defendant-Appellant.**

**Nos. 83-1295, 83-3101.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 16, 1985.

Decided May 3, 1985.

As Amended June 28, 1985.

William Hogan, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Charles O. Morgan, San Francisco, Cal., for defendant-appellant.

Before WRIGHT and TANG, Circuit Judges, and CROCKER *, District Judge.

TANG, Circuit Judge:

Robert Leo Moran was convicted of conspiring to defraud the I.R.S. by laundering funds from the sale of narcotics, and was sentenced to 18 months in prison and fined $10,000 on November 18, 1983. Moran had been indicted on seventeen counts, but the district court dismissed sixteen counts before trial on the basis that pre-indictment delay violated Moran's due process rights. The government appeals the order dismissing the sixteen counts, asserting that Moran's due process rights were not violated by investigative delay. Moran appeals his

* Honorable Myron Donovan Crocker, Senior United States District Judge for the Eastern District of California, sitting by designation.

conviction, asserting that the remaining count should have been dismissed and he also makes several other assertions of error. We reverse the dismissal of Counts II–XVII, and affirm Moran's conviction on Count I.

**FACTS**

On March 11, 1980, Moran was first indicted for his alleged role in the conspiracy to import marihuana in the Helena Star case.[1] Victorson and Hale, the government's two main witnesses against Moran, were free on bond pending the appeals of their convictions, and failed to appear in time for Moran's scheduled trial date of September 8, 1980. Without the presence of Victorson and Hale, the government declined to proceed with its prosecution; Judge Voorhees dismissed the indictment against Moran without prejudice on September 8, 1980.

Victorson and Hale returned to the United States from Bolivia in April 1981. At this time the government had obtained new information from Guillermo Cooke, a convicted heroin dealer recently released from federal prison. This information was an impetus for an expanded investigation into Moran's money laundering activities that went beyond the Helena Star incident, and involved investigation by Internal Revenue Service agents.

Moran was reindicted on April 15, 1983, some two years after the return of the key witnesses Victorson and Hale. The new indictment contained the original sixteen counts alleged in 1980, plus the added Count I, which alleged a conspiracy to defraud the Internal Revenue Service by laundering through foreign banks and corporations funds from narcotics smuggling.

Moran moved the district court to dismiss the new indictment as violative of his fifth amendment due process rights because of the pre-indictment delay of two years from the return of Victorson and Hale, over three years from the original indictment, and five years from the alleged criminal acts. On July 14, 1983, the district court dismissed Counts II–XVII of the indictment, leaving only the Count I tax avoidance conspiracy charge for trial.

On October 7, 1983 after a lengthy trial, the jury found Moran guilty of the charge. On November 18, 1983, Judge Voorhees sentenced Moran to 18 months imprisonment and fined him $10,000. Moran is free on bail pending appeal.

**Government's Appeal: Dismissal of Counts II–XVII of the Indictment Against Moran.**

In its Order of August 22, 1983, the district court concluded that re-indicting Moran resulted in his suffering a deprivation of due process because of pre-indictment delay, and ordered that Counts II–XVII be dismissed. The court found that Moran suffered actual prejudice consisting of the "verifiable inability of the defendant to present witnesses testimony previously available to him in September of 1980 ..." Furthermore, the court concluded that the government's delay was excessive, and not sufficiently justified under *United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), and *United States v. Mays,* 549 F.2d 670 (9th Cir.1977).

**Legal standard for determining if due process is violated by pre-indictment delay.**

The Supreme Court and this circuit have established a two-prong test for determining if pre-indictment delay has risen to the level of a denial of due process. The first prong of this test is that the defendant must prove "actual prejudice" occurred from the delay. *Lovasco,* 431 U.S. at 789, 97 S.Ct. at 2048; *United States v. Mills,* 641 F.2d 785, 788 (9th Cir.1981), *cert. de-*

1. On April 16, 1978, the "Helena Star" was boarded and seized by the U.S. Coast Guard. The vessel contained a large quantity of marihuana, and its foreign Captain and First Mate were convicted of conspiracy and attempt to import marijuana into the United States. *United States v. Rubies,* 612 F.2d 397 (9th Cir.1979), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2162, 64 L.Ed.2d 794 (1980). U.S. citizens David A. Victorson and Eric A. Hale were convicted as coconspirators in arranging the marihuana smuggling operation in September 1978.

*nied,* 454 U.S. 902, 102 S.Ct. 409, 70 L.Ed.2d 221 (1981).

The dispute over the applicable legal standard in this case centers around the second prong of the test. The United States asserts that the defendant must prove that the government intentionally delayed the indictment to gain a tactical advantage, or delayed it in reckless disregard of the circumstances indicating an appreciable risk of harm to the defense under *Lovasco* and a series of Ninth Circuit cases. Moran, relying principally upon *United States v. Mays,* 549 F.2d 670 (9th Cir.1977), contends that the second prong of the test requires the court to weigh the length of the delay with the reasons for the delay, and that under this test a showing of negligence is sufficient.

In *Mays,* our court expressly held that after actual prejudice is shown, the length of the pre-indictment delay and the reason for that delay must be weighed to determine if due process has been violated. 549 F.2d at 678. We also expressly acknowledged that delays caused by negligent conduct on the part of the government would be considered in the balancing because the ultimate responsibility for such circumstances must rest with the government rather than the defendant. *Id.* Some of our cases have followed the *Mays* formulation of the balancing test, including consideration of negligent conduct. *See, e.g., United States v. Tornabene,* 687 F.2d 312, 317 (9th Cir.1982); *United States v. Saunders,* 641 F.2d 659, 665 (9th Cir.1980), *cert. denied* 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981); *United States v. Stone,* 633 F.2d 1272 (9th Cir.1979); *United States v. Valenzuela,* 596 F.2d 824, 827 (9th Cir.), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979).

The government asserts that certain language from *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971) and *Lovasco,* 431 U.S. at 795, n. 17, 97 S.Ct. at 2051, n. 17, overrules *Mays* and requires that the defendant prove either intentional or reckless conduct on the part of the government. We reject this contention. The language from these two cases merely acknowledges governmental concessions that intentional or reckless conduct would or might be considered violations of the due process clause if actual prejudice had been shown. The *Lovasco* court did not set out intent or recklessness as required standards of fault. In fact, in both the *Marion* and *Lovasco* cases, the Court stated that it "could not determine in the abstract the circumstances in which preaccusation delay would require dismissing prosecutions." *Lovasco,* 431 U.S. at 796, 97 S.Ct. at 2052. The Court further stated

> "[w]e therefore leave to the lower courts, in the first instance, the task of applying the settled principles of due process that we have discussed to the particular circumstances of individual cases. We simply hold that in this case the lower courts erred in dismissing the indictment."

*Id.* at 797, 97 S.Ct. at 2052.

Thus, the government's assertion that *Lovasco* overrules the possibility that due process might be violated upon a negligent delay by the government is not supported by the cited cases. The *Lovasco* court simply held that after proof of prejudice is shown, "the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *Id.* at 790, 97 S.Ct. at 2048. This is fully consistent with the *Mays* standard.

We do acknowledge that some of our cases following *Lovasco* seem to have adopted intent and recklessness as a requirement for showing a due process deprivation. *See United States v. Burns,* 701 F.2d 840, 842 (9th Cir.) *cert. denied* —— U.S. ——, 103 S.Ct. 3123, 77 L.Ed.2d 1375 (1983); *United States v. Walker,* 601 F.2d 1051, 1056 (9th Cir.1979).

In *Burns,* the defendant did not show any prejudice from the delay, therefore, the language regarding intent or reckless disregard is merely dictum. 701 F.2d at 842. In *Walker* the court considered expressly whether *Lovasco* overruled *Mays,* and held that the balancing test and results in the *Mays* case were consistent with the *Lovas-*

*co* case, 601 F.2d at 1056, n. 1, but did not address the question of whether negligent conduct could provide a sufficient basis for a deprivation of due process under the right circumstances.

■ The determination of whether a pre-indictment delay has violated due process is essentially decided under a balancing test, *Lovasco,* 431 U.S. at 790, 97 S.Ct. at 2048; *Mays,* 549 F.2d at 677, and we do not find that intent or reckless behavior by the government is an essential ingredient in the mix. If mere negligent conduct by the prosecutors is asserted, then obviously the delay and/or prejudice suffered by the defendant will have to be greater than that in cases where recklessness or intentional governmental conduct is alleged.

■ After making the balancing determination, a pre-indictment delay will be permissible unless it violates fundamental conceptions of justice which lie at the base of our civil and political institutions. *Lovasco,* 431 U.S. at 790, 97 S.Ct. at 2048. Furthermore, in this area, the due process clause plays a limited role because primary protection is afforded to defendants by the applicable statute of limitations. *Id.* at 789, 97 S.Ct. at 2048.

**Under the correct legal standard, the district court erred in dismissing Counts II–XVII.**

■ The district court's dismissal of Counts II–XVII based on its determination that a denial of due process occurred because of pre-indictment delay is reviewed under the clearly erroneous standard. *See, e.g., Tornabene,* 687 F.2d at 317; *Mays,* 549 F.2d at 678.

*Actual Prejudice.*

■ The defendant has a heavy burden to prove that a pre-indictment delay caused actual prejudice: the proof must be definite and not speculative, and the defendant must demonstrate how the loss of a witness and/or evidence is prejudicial to his case. *Mays,* 549 F.2d at 677. *See United States v. Carruth,* 699 F.2d 1017 (9th Cir. 1983) *cert. denied,* — U.S. —, 104 S.Ct. 698, 79 L.Ed.2d 164 (1984). Our cases reflect this heavy burden, as we have often found actual prejudice lacking in the record. *See, e.g., Mills,* 641 F.2d 785; *Stone,* 633 F.2d 1272. Accordingly, although we review the district court's finding of actual prejudice under the clearly erroneous standard,[2] we must keep the defendant's heavy burden in mind.

■ The district court found expressly that the actual prejudice to Moran consisted of

> "The verifiable inability of the defendant to present witnesses or witness testimony previously available to him in September of 1980 (and subsequently). The witnesses' testimony is detailed in the defendant's moving and reply papers."

Moran's assertions of prejudice consist solely of the loss of witness testimony and the impairment of other witness testimony by the dimming of memory. In *United States v. Pallan,* 571 F.2d 497 (9th Cir.) *cert. denied,* 436 U.S. 911, 98 S.Ct. 2249, 56 L.Ed.2d 411 (1978), we emphasized that protection from lost testimony generally falls solely within the ambit of the statute of limitations. We further questioned whether such lost testimony would ever qualify for the level of prejudice necessary to establish a due process violation, and found that the defendant's claims of lost testimony were speculative, and that no showing was made that the loss of such testimony had actually impaired meaningfully the defendant's ability to defend himself. *Id.* at 500–501.

The essence of Moran's claim of actual prejudice is the loss of five witnesses who were available in September of 1980, but who were not available to testify in 1983. Two of these witnesses, Dr. Mark Becker and Susan Kessler, are witnesses who have subsequently died; three other witnesses, Alvaro Azuero, Captain Roman Rubies and

2. We note that the validity of the standard of review is called into question by this circuit's en banc opinion in *United States v. McConney,* 728 F.2d 1195 (9th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Our holding in this case would not differ under de novo review. We therefore do not find this case the appropriate one to reexamine the *Tornabene* and *Mays* decisions on the standard of review issue.

Pedro Vera, are presently out of the country and refused to testify in 1983, but were allegedly available in 1980. We have serious doubts whether Moran has made any showing of prejudice beyond that which the statute of limitations is designed to control. *Mays,* 549 F.2d at 679–80. We find it unnecessary to reverse on this close question, however, because we find the district court clearly erred in applying the second prong of the test to this case.

*Balancing the length of the delay with the reasons for the delay.*

The district court found that the government's delay in reindicting Moran was unjustified and excessive, and that the reasons offered for this delay were insufficient as to Counts II–XVII. In oral findings at the conclusion of the hearing on the dismissal motion, the district court stated:

> "I cannot make a finding and will not make a finding that the Government did this as a tactical maneuver in order to gain an advantage on the defendant, but I find that that was the effect, that is, it did gain an advantage upon the defendant by this delay."

The court concluded that the government should have reindicted on the original counts as soon as Victorson and Hale were returned to custody in 1981.

The district court characterized the government's delay in this case as "unjustified", but it never expressly found any fault on the part of the government. In fact, the only finding regarding culpability was the court's refusal to find an intentional delay. Although as established above, negligent governmental conduct may form a basis for unconstitutional pre-indictment delay, our cases clearly require some showing of governmental culpability to prove a deprivation of due process. *See e.g., United States v. Swacker,* 628 F.2d 1250, 1254 n. 5 (9th Cir.1980).

The record in this case is absent any evidence of culpability. Moran's bald assertions to the contrary are unavailing. The record shows that the 23 month delay between the reappearance of Victorson and Hale and the reindictment was caused by the government's investigation of new evidence and its decision to try all the counts in one trial.

In *Lovasco,* the Supreme Court held that prosecuting a defendant following investigative delay does not constitute a deprivation of due process, even if the defendant's "defense might have been somewhat prejudiced by the lapse of time." 431 U.S. at 796, 97 S.Ct. at 2052. The Court was reluctant to allow courts to substitute their judgment for the prosecutor's in the decision of when an indictment should issue. The Court noted that prosecutors are not under any duty to file charges as soon as probable cause exists, nor even as soon as the Government "has assembled sufficient evidence to prove guilt beyond a reasonable doubt." *Id.* at 792, 97 S.Ct. at 2049. This is especially so in cases where a criminal transaction involved more than one person or more than one illegal act, as in this case. *Id.* at 793, 97 S.Ct. at 2050.

*Moran's right to speedy trial.*

Moran asserts that in the alternative, the dismissal of the Counts II–XVII should be affirmed on the basis of a violation of his right to a speedy trial. This sixth amendment claim is raised for the first time on appeal, but our court may affirm a lower court decision on any ground presented in the record. *Compton v. Ide,* 732 F.2d 1429, 1433 (9th Cir.1984). We decline Moran's invitation to affirm on this ground. We find *United States v. MacDonald,* 456 U.S. 1, 7, 102 S.Ct. 1497, 1501, 71 L.Ed.2d 696 (1982) dispositive on the issue; the speedy trial clause has no application where, as here, the government dismissed charges in good faith.

The dismissal of Counts II–XVII is therefore reversed and remanded to the district court.

**MORAN'S APPEAL**

*Refusal to Dismiss Count I.*

Count I of the indictment, which alleges Moran's involvement in a conspiracy to defraud the Internal Revenue Service, was the only new charge in the seventeen count indictment. Moran's main contention is that the government possessed all the facts necessary to indict him on this

charge at the time Victorson and Hale returned to the United States in 1981, and that the government's alleged ongoing investigation was a sham. We reject these contentions. The record supports the government's assertion that it obtained new evidence in 1981 and thereafter. Count I charged a new crime with different elements than those charged previously. The district court's refusal to dismiss Count I for pre-indictment delay was not clearly erroneous. *See Tornabene,* 687 F.2d at 317; *Mays,* 549 F.2d at 679.

*Evidence of the Helena Star Conspiracy.*

Moran contends that despite the dismissal of Counts II–XVII, the court improperly allowed the prosecution to present evidence regarding the Helena Star case. Moran contends that he was prejudiced because the prosecution devoted a majority of its testimonial evidence to the Helena Star facts which led to jury confusion. The government maintains that the Helena Star conspiracy was integral background information for the jury to understand Moran's role in laundering money from Victorson, Hale, and Sawicki's drug smuggling activities.

We note that the court instructed the jury several times that the defendant was not charged with marihuana importation or distribution. Additionally, the court instructed the jury that they should consider the Helena Star testimony only as background, as it might

> bear upon the charge in the indictment that the defendant, David Allen Victorson, Eric A. Hale, and Lyle Sawicki conspired together to impede, impair, obstruct and defeat the lawful functions of the Internal Revenue Service.

The judge's limiting instructions safeguarded Moran from any prejudice. Additionally, testimony of the Helena Star incident was necessary background for the jury's full understanding of the defendant's activities in this case. *See United States v. O'Connor,* 737 F.2d 814 (9th Cir. 1984), *cert. denied,* — U.S. —, 105 S.Ct. 1198, 84 L.Ed.2d 343 (1985).

Moran next contends that Count I of the indictment alleged more than one conspiracy, and that the evidence presented regarding the Helena Star incident was symptomatic of this duplicitious indictment. Moran would view the allegations against him of money laundering and transfers of money through financial institutions abroad as totally separate from the transportation of narcotics by Victorson and the others. Moran argues that dismissal is warranted because the government alleged separate multiple conspiracies in a single indictment.

Separate acts at separate times should not be confused with separate conspiracies. The actions of Moran and his co-conspirators were designed to accomplish a single goal—to hide the source and amount of their drug smuggling gains from the I.R.S. In a supplemental instruction following a jury question, the court instructed the jury,

> In order for you to find the defendant guilty of the crime charged in the indictment, you must find that he was a member of the charged conspiracy from its beginning.

This instruction put the question of a single conspiracy before the jury.

The standard for determining the existence of a single conspiracy is

> "whether there was one overall agreement among the various parties to perform various functions in order to carry out the objectives of the conspiracy."

*United States v. Jabara,* 618 F.2d 1319, 1327 (9th Cir.), *cert. denied,* 446 U.S. 987, 100 S.Ct. 2973, 64 L.Ed.2d 845 (1980). Here, Count I fulfills this requirement by alleging an overall agreement among the parties to misstate and misrepresent income to the IRS, wherein Moran's function was to set up the laundering of funds to conceal from the IRS the identities of individuals who had realized income from unlawful importation and distribution of narcotics. The indictment, therefore, meets the *Jabara* standard. We find no error.

*Overt Acts in the State of Washington.*

Moran contends that the government failed to prove that any members knowingly committed an overt act in furtherance of the conspiracy within the West-

ern District of Washington. Moran cites *Grunewald v. United States,* 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957), for the proposition that perjured testimony before the grand jury in order to cover up an initial conspiracy cannot be considered as part of the original conspiracy. Five acts were performed within the Western District of Washington, including Moran's transfer of funds for purchase of a tug and barge intended for use for vessel to land transportation of the marijuana aboard the Helena Star, presentation of false documents, and Moran's perjury.

Although *Grunewald* does hold that perjury given to cover up an original conspiracy is not considered an overt act in furtherance of the original conspiracy, 353 U.S. at 401–406, 77 S.Ct. at 972–974, the transfer of funds by Moran for the tug and barge provides in itself the required overt act in the Western District of Washington. The transfer fit within the indictment's allegations of concealing and legitimizing funds from illegal activities.

*Sufficient Evidence to Establish Commission of the Crime Charged.*

Moran contends that insufficient evidence against him was presented to establish his participation in the conspiracy. Moran's first contention is that under *U.S. v. Klein,* 247 F.2d 908 (2d Cir.1957), *cert. denied,* 355 U.S. 924, 78 S.Ct. 365, 2 L.Ed.2d 354 (1958), and *United States v. Enstam,* 622 F.2d 857 (5th Cir.1980) *cert. denied,* 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981), evidence must be presented not only that a defendant advocated nondisclosure of income, but also that governmental functions were interfered with by deceit, craft or trickery. *Klein,* 247 F.2d at 916. In *Enstam,* the court relied on evidence showing fictitious deductions and misreporting of income. 622 F.2d at 860–63.

The record contains evidence that Moran advocated that Victorson, Hale and Lyle Sawicki pay income taxes only on funds labeled as consulting fees, a small portion of their smuggling proceeds. Testimony also revealed that the scheme of foreign and domestic corporations and bank accounts was created to "make it as confusing as possible to unravel in this case if the IRS ever had to unravel it." This evidence supplies a sufficient basis under the *Klein* and *Enstam* cases.

Moran additionally claims that under *United States v. Dahlstrom,* 713 F.2d 1423 (9th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 2363, 80 L.Ed.2d 835 (1984), his first amendment rights were violated because he merely counseled his clients to pay taxes owed. We reject this contention. Moran's conduct "went far beyond advocacy and amounted to participation in unlawful action." *United States v. Little,* 753 F.2d 1420, 1434 (9th Cir.1984) (as amended Feb. 15, 1985).

Finally, the court's instructions to the jury were clear. First, the jury was instructed that standing alone, there was nothing illegal about forming off-shore corporations in foreign countries, or in those corporations transferring funds into or out of the United States. The court also instructed:

> "if you find that defendant was providing legal advice to Victorson, Hale and Sawicki, that those persons then used that advice for illegal purposes without that illegal use being intended by the defendant then you must find him not guilty."

Moran's assertion of error due to insufficient evidence is rejected.

*Admission of Records of Foreign Banks and Corporations.*

Moran's next assertion of error stems from the admission of Exhibits 505 and 506. Exhibit 505 consists of a bank statement, deposit slip, and four letters signed by Moran pertaining to an account at the Barclay's International Bank branch at the Cayman Islands. Exhibit 506 consists of letters, corporate minutes, a bank signature card, and bank debit receipts pertaining to the corporations set up by Moran in the Cayman Islands. The bank manager and the assistant corporate agent each submitted signed statements certifying that documents of this type contained in each exhibit are kept in the ordinary course of business, and that these documents were so kept; their statements were admitted with the exhibits.

Moran asserts that the district court committed prejudicial error in admitting these exhibits without requiring their introduction by a custodian or other qualified witness under Fed.R.Evid. 803(6). Moran claims that the failure to have such a witness denied him his confrontation rights. The trial court's decision to admit evidence over hearsay objections is reviewed for abuse of discretion. *United States v. Burreson,* 643 F.2d 1344, 1349 (9th Cir.), *cert. denied,* 454 U.S. 847, 102 S.Ct. 165, 70 L.Ed.2d 135 (1981).

The district court considered the testimony of Hargreaves Rawstron, the registered beneficial owner of the various Cayman corporations, and Asst. U.S. Atty. Frush, who accompanied Rawstron to Cayman to gather the documents. The court considered each document separately, noted the confrontation problem and only admitted some of the offered documents. Defendant had an opportunity to cross-examine Mr. Frush over certain now objected to documents, but declined the opportunity.

We find that letters and deposit slips signed by Moran are admissible as admissions of a party opponent under Rule 801(d)(2)(A). *See, e.g., United States v. Matlock,* 415 U.S. 164, 172, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974); *United States v. Tamura,* 694 F.2d 591, 597–98 (9th Cir. 1982). Since the out of court statements introduced through these documents were made by Moran himself, he can claim no confrontation clause violation. *See United States v. Rios-Ruiz,* 579 F.2d 670, 676–77 (1st Cir.1978).

We need not reach the issue whether the remaining documents were admitted in error. Our review of the record indicates that evidence of Moran's guilt, independent of this evidence, "was manifest and overwhelming." *United States v. Martinez,* 536 F.2d 886, 889 (9th Cir.), *cert. denied,* 429 U.S. 907, 97 S.Ct. 273, 50 L.Ed.2d 189 (1976). The error, if any, was harmless. *See id.* *Prejudice by Alleged Prosecutorial Misconduct.*

Moran asserts that the government's cross-examination of Moran and Urich (Moran's law partner) contained prejudicial accusations of unrelated prior bad acts made without a good faith basis. We note that Moran failed to object to most of these alleged errors at trial. Judge Voorhees admonished the jury to disregard the questions and any implications from them.

The district court's quick and straightforward instructions to the jury eliminated any potential prejudice to Moran. No reversible error is therefore shown under our circuit's standard for prosecutorial misconduct. *See United States v. Berry,* 627 F.2d 193, 196–99 (9th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 843 (1981).

CONCLUSION

The district court's dismissal of sixteen counts based on pre-indictment delay (No. 83–3101) is REVERSED. Moran's conviction on Count I (No. 83–1295) is AFFIRMED.