949 F.2d 399
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
David Arnold FELDMAN, Defendant-Appellant.
 No. 90-50470.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 9, 1991.
Decided Dec. 5, 1991.
 
 Before BEEZER, CYNTHIA HOLCOMB HALL and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 David Arnold Feldman appeals his conviction by a jury on three counts of mail fraud in violation of 18 U.S.C. § 1341. He also appeals the district court's order that he pay $70,700,000 in restitution for losses caused by the fraud, as well as the court's appointment of a receiver to manage the payment of that restitution. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm appellant's conviction on all three counts. But we vacate the order of restitution and remand to the district court for resentencing consistent with our opinion in United States v. Sharp, 941 F.2d 811 (9th Cir. August 5, 1991).
 
 
 3
 * Appellant's convictions for mail fraud were based on three mailings in furtherance of a scheme to defraud institutions that invested in mortgage loan pools set up by appellant's company, National Mortgage Equity Corporation (NMEC). Investors purchased certificates that entitled them to interest and principal paid on each loan made from their pool. Most of the loans were made to benefit NMEC, appellant, and other participants in the fraud. A large portion of the loans were never repaid. Consequently, investors lost millions of dollars, most or all of which they recovered in civil litigation against Bank of America, which had served as escrow agent on all the certificate purchases.
 
 II
 
 4
 Appellant first challenges the sufficiency of the evidence to support his conviction on each of the mail fraud counts. We will reverse a conviction for insufficient evidence only if we determine, "viewing the evidence in the light most favorable to the Government, that no rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." United States v. Martinez, 806 F.2d 945, 946 (9th Cir.1986), cert. denied, 481 U.S. 1056 (1987). Applying this standard, we uphold appellant's conviction on each count.
 
 
 5
 * The mailing upon which Count 4 was based was a June 12, 1984 letter from Robert Meceda, acting president of NMEC during appellant's incarceration at Boron Federal Prison, to Kent Rogers, appellant's co-defendant and head of Westpac, a borrower from the mortgage pool. According to the government's indictment, appellant initially agreed to lend Westpac over 24 million dollars for construction work. Although Westpac never made its loan payments, appellant continued to lend Rogers money in excess of the value of the properties securing the loans and did not place controls on the use of the money. In the end, NMEC lent Westpac a total of almost 45 million dollars, none of which was ever repaid.
 
 
 6
 Meceda, who was not implicated in the fraud, testified that when he was acting president of NMEC, he came to suspect that Rogers had never obtained reinsurance on the Westpac loans. He further testified that he informed Rogers that NMEC would make no more loans to Westpac until Rogers obtained reinsurance from an "A" rated company and that Rogers responded that if he received no more loans he would default on his outstanding loans. These developments culminated in the June 12 letter, informing Rogers that Westpac was seriously delinquent in its loan payments and demanding repayment.
 
 
 7
 Appellant argues that the letter to Rogers could not have been "in furtherance" of the fraud "as a matter of law" because it thwarted, rather than aided the NMEC scheme. If the purpose of the scheme was to divert the money of innocent investors into the hands of Rogers and the other perpetrators of the fraud, appellant argues, then it is illogical for the government to suggest that a letter demanding that Rogers pay back his loans was in furtherance of the fraud. Far from furthering the fraud, such a demand would throw a wrench into the scheme by demanding that Rogers return the money.
 
 
 8
 Relying on Schmuck v. United States, 489 U.S. 705 (1989), the government argues that the letter was in furtherance of the fraud because repayment of the loans was necessary to keep the NMEC program afloat. The fraud "depended on the goodwill of prior investors to allow expansion of the program and the postponement of complaints to authorities." The government's theory finds support in the record. The innocent Meceda was not the only person who sought repayment from Rogers. Appellant himself had instructed co-defendant Mary Brown to seek repayment of certain Westpac loans. And when that repayment was not forthcoming, appellant instructed Brown to withhold certain amounts from future loans to Westpac. A jury that heard this evidence could reasonably conclude that the Meceda letter was not inconsistent with the fraudulent scheme. It could conclude that unlimited extensions of credit to Westpac were detrimental to the scheme, and that if appellant himself had once sought to recover some of the Westpac loans in furtherance of the fraud, Meceda's letter could have served the same function. Under Schmuck, such a conclusion would be sufficient to support a finding that Meceda's letter was in furtherance of the scheme to defraud. See 489 U.S. at 711-712 (innocent mailings necessary to sustain fraud satisfy "in furtherance" element of mail fraud charge.)
 
 B
 
 9
 The letter that formed the basis for Count 6 was from Mr. Edie of Irving Savings in New Jersey, an investor in the mortgage pools, to Carol Sutor of NMEC. The letter was dated July 27, 1984, but records show that a check contained in that letter was deposited in an NMEC bank account in Inglewood, California on that very same day. The parties agree, as do we, that remarkable efficiency on the part of the Post Office is not the most likely explanation for this circumstance. Appellant contends that the facts indicate the letter was delivered by means other than the mail--though appellant offers no alternative scenario under which the check was likely to have traveled across the continent and been processed and deposited in NMEC's bank account all in a single day. The government responds that in light of Mr. Edie's testimony that it was his practice to place such letters in the mail, the jury probably concluded that the letter was indeed mailed but misdated. We agree with the government that a rational jury could have made such a finding.
 
 
 10
 Use of the mails is an essential element of the crime of mail fraud. See 18 U.S.C. § 1341. But we have not required direct proof that an item was sent through the mail, and instead have held that testimony regarding routine custom and practice can provide sufficient evidence to support an inference that the item was sent through the mail. See United States v. Green, 745 F.2d 1205, 1208 (9th Cir.1984), cert denied, 474 U.S. 925 (1985). Mr. Edie testified that it was his practice to send letters such as the one at issue here through the mail, and this testimony was sufficient evidence to support the jury's finding.
 
 
 11
 Appellant cites several cases for the proposition that a legal "presumption" that an event occurred falls away in light of actual evidence that the event did not occur. Based on these cases, he argues that the "presumption" created by Mr. Edie's testimony must fall away in the face of the evidence of the bank deposit. Appellant confuses a legal presumption, which is created by statute and which may be rebutted by the evidence, with an inference, which is not created by law but arises from the evidence itself. The cases to which appellant cites involve the former. See Del Vecchio v. Bowers, 296 U.S. 280 (1935); Panduit Corp. v. All States Plastic Mfg. Co., 744 F.2d 1564, 1579 (Fed.Cir.1984); Sperberg v. Goodyear Tire & Rubber Co., 519 F.2d 708, 713 (6th Cir.), cert. denied, 423 U.S. 987 (1975). This case involves the latter. Mr. Edie testified to his practice, and the jury was free to infer from this testimony that the letter was sent through the mail, just as they were free to infer from the evidence of the bank deposit that it was not. They chose to infer that the letter was sent through the mail and we cannot say that the evidence was insufficient to support that finding.
 
 
 12
 Appellant also claims that the Edie letter cannot serve as the basis for a mail fraud charge because Irving Trust, having lost no money, was not a "victim" of the fraud. This argument, which appellant appears to abandon in his reply brief, is patently frivolous. First, the fact that as a result of the settlement with Bank of America Irving Trust lost no money is irrelevant to its status as a victim of the fraud. See United States v. Telink, Inc., 910 F.2d 598, 599-600 (9th Cir.1990). Second, even if we were to accept appellant's cramped definition of "victim," appellant has offered no basis for us to conclude that a mailing supporting a mail fraud charge must emanate from either a victim or perpetrator of the crime. And indeed the law is to the contrary. See Schmuck, 489 U.S. 705. (mailings made by innocent used car dealers who lost no money as a result of defendant's scheme to defraud the customers of those dealers).
 
 C
 
 13
 The mailing that was the basis for Count 8 was a letter from Carol Sutor of NMEC to Riverhead Savings Bank in New York, another investor, indicating that a particular mortgage pool had been filled. Appellant maintains that the evidence was insufficient to base a mail fraud charge on this letter, because the government never offered testimony from anyone at Riverside to the effect that the letter influenced Riverside to part with its money. We need not address appellant's claim that the government's evidence was insufficient. For the premise of that claim--that the government had to prove that the Sutor letter could have reasonably influenced a person to part with his money--is itself faulty.
 
 
 14
 Appellant cites no law to support his point that the government was required to show that the Sutor letter could have reasonably duped Riverside, but concocts his argument by fabricating an additional element for the crime of mail fraud. Quoting rather disingenuously from the jury instructions, appellant claims that the government was required to prove that the Sutor letter would "reasonably influence a person to part with money." But to support a mail fraud count, a mailing need not contain promises that would "reasonably influence a person to part with money." It need not contain any promises at all--indeed it may be entirely innocent. Schmuck, 489 U.S. at 715.
 
 
 15
 The jury instructions, which appellant quotes out of context, are in accord. They indicate that the promises or statements that comprise the scheme to defraud must be such that "they would reasonably influence a person to part with money or property." Nowhere do they suggest that those promises must be contained in the mailings upon which the mail fraud charges are based. For these reasons, we reject appellant's claim that the evidence was insufficient to support his conviction on Count 8.
 
 III
 
 16
 Appellant claims that the district court abused its discretion by failing to sanction the government for violating its discovery obligations under Rule 16 of the Federal Rules of Criminal Procedure and that we should therefore overturn his conviction on Count 4. It seems that there were two versions of the June 12, 1984 letter, which was the basis of that count; one was sent via Federal Express, the other via certified mail. The government included in the discovery materials provided to appellant a version of the letter with the caption "VIA FEDERAL EXPRESS." At trial, however, the government introduced into evidence a version with the caption "CERTIFIED MAIL RETURN RECEIPT REQUESTED," which had not been included with the discovery materials. This court has held that the government's failure to produce documents that are intended for use by the government as evidence in chief at trial may require reversal if the defendant can show prejudice to his defense from their use at trial. United States v. Gee, 695 F.2d 1165, 1167 (9th Cir.1983). We conclude that even if the government's conduct did violate Rule 16, appellant's conviction on Count 4 must stand because he was not prejudiced by that conduct.
 
 
 17
 Upon request, the government must permit a defendant to examine any documents it intends to use as evidence at trial. Fed.R.Crim.P. 16(a)(1)(C). Furthermore, the government's obligation to turn over evidence continues throughout the course of the litigation. It must "promptly notify the other party or that other party's attorney of the existence of the additional evidence or material." Fed.R.Crim.P. 16(c). But the government's obligations under the statute are limited. Rule 16(a)(1)(C) requires only that upon request by the defendant, the government "permit the defendant to inspect and copy or photograph" documents "which are within the possession, custody or control of the government, and which are ... intended for use by the government as evidence in chief at the trial."
 
 
 18
 The government claims that it fulfilled its obligations under Rule 16 because it had an open file discovery policy for a year prior to trial. Appellant responds that the policy was insufficient to satisfy Rule 16 in this case. He suffered prejudice because by providing him with the "Federal Express" letter but not the "certified mail" letter, the government led appellant to believe it had no case on the Count 4 mailing. "[F]or nearly a year prior to trial, the defense legitimately believed that the government had no case as to Count 4 because the letter underlying that count had not been sent by the United States mail, and instead was sent by Federal Express. The defense therefore had no incentive to investigate further." We reject appellant's argument.
 
 
 19
 Appellant has not demonstrated that the prejudice he suffered was caused by anything other than his own lack of diligence. Appellant knew from the time the Grand Jury Indictment was issued in June of 1988 that the government intended to base a mail fraud count on this letter which, according to the indictment was "sent and delivered by the Postal Service according to the directions thereon." Yet appellant failed to investigate the discrepancy between the indictment and the document it had, which it could easily have done under the open file policy. While there may well have been, as appellant asserts, almost 100,000 pages of exhibits, appellant went to trial on only ten counts of mail fraud. It would have been no great burden on appellant's attorney to examine the ten exhibits that were the actual mailings upon which each count was based. Under these circumstances, we cannot say that the government's conduct caused appellant the prejudice that we require to be shown before we will overturn a conviction for a violation of Rule 16.
 
 IV
 
 20
 Appellant asserts that the district court erred by refusing to dismiss the indictment against him on the grounds that his right to due process was violated by the government's four year delay in bringing this indictment. The government began its investigation of appellant's activities in 1985, after being apprised of civil proceedings arising out of those activities. Four years later, in May of 1989, the government indicted appellant on twenty counts of mail fraud, fifteen of which were dropped prior to and during trial. Appellant claims that because evidence that could have exonerated him was lost between 1985 and 1989, he suffered prejudice as a result of the delay. Appellant also claims that the government acted "in at least questionable faith by delaying the indictment in order to gain a tactical advantage from developments in the pending civil proceedings." We review for clear error a district court's determination about whether due process has been violated by a pre-indictment delay. United States v. Moran, 759 F.2d 777, 782 (9th Cir.1985), cert. denied, 474 U.S. 1102 (1986).
 
 
 21
 * The Supreme Court addressed the consequences of pre-indictment delay in United States v. Marion, 404 U.S. 307 (1971) and United States v. Lovasco, 431 U.S. 783 (1977). In Marion the Court held that under certain circumstances, the Due Process Clause may be violated if a defendant suffers substantial prejudice as a result of a pre-indictment delay. 404 U.S. at 324. The Court refined that holding in Lovasco when it ruled that while the Due Process Clause does place some limits on the government's ability to delay an indictment, a defendant's constitutional rights are not violated solely because he suffers prejudice as a consequence of the delay. 431 U.S. at 795-96. The Court expressed deep concern about a rule that would require prosecutors to bring hasty indictments based on insufficient evidence and insufficient thought. See id. at 792-95.
 
 
 22
 In Moran, this court elaborated on the meaning of Marion and Lovasco. We set out a two part test for determining when a pre-indictment delay violates due process. Consistent with the Court's opinions, we held that a showing that the defendant suffered actual prejudice because of the delay is a prerequisite to making out a due process violation. Id. at 780. And we concluded that a "defendant has a heavy burden to prove that a pre-indictment delay caused actual prejudice: the proof must be definite and not speculative, and the defendant must demonstrate how the loss of a witness and/or evidence is prejudicial to his case." Id. at 782.
 
 
 23
 But we went further, and following Lovasco held that even a showing of prejudice is, by itself, insufficient to demonstrate that due process has been violated. Even if a defendant is able to show prejudice, a court must balance that prejudice against the length of the delay and the reasons for it, to determine whether it violates "fundamental conceptions of justice." Id. "If mere negligent conduct by the prosecutors is asserted, then obviously the delay and/or prejudice suffered by the defendant will have to be greater than that in cases where recklessness or intentional governmental conduct is alleged." Id.
 
 B
 
 24
 Appellant alleges that he was prejudiced by the pre-indictment delay because evidence that would have exonerated him was lost during the four years between the commencement of the investigation and the indictment. At the time of each of the mailings for which appellant was convicted, he was incarcerated at Boron Federal Prison Camp. He claims that records of his telephone conversations while at Boron would have refuted the government's allegation that he was active in the affairs of NMEC during the period of his incarceration.[1] He also claims that the delay prejudiced him by preventing him from obtaining fresh evidence, in the form of Federal Express receipts, that the letters that formed the basis of his convictions were delivered by means other than the mails.[2]
 
 
 25
 Appellant has failed to make the showing of prejudice required by Moran. It will be the rare case in which a defendant can make a definite showing of actual prejudice based on lost documents or testimony. The statute of limitations provides the primary protection against such loss. United States v. Pallan, 571 F.2d 497, 501 (9th Cir.), cert. denied, 436 U.S. 911 (1978); see also United States v. Sherlock, 865 F.2d 1069, 1073 (9th Cir.1989); United States v. Wallace, 848 F.2d 1464, 1470 (9th Cir.1988); United States v. Loud Hawk, 816 F.2d 1323, 1325 (9th Cir.1987); Moran, 759 F.2d at 782. Indeed, appellant cites no case in which this court found that a claim of prejudice due to lost evidence made out a due process violation.
 
 
 26
 Appellant's own claims are entirely too speculative to make such a showing. First, it is sheer speculation that tapes were ever made of appellant's telephone conversations; prison officials stated that prisoners' calls were recorded " 'for security reasons when criminal activity is suspected.' " Appellant makes no claim that prison officials suspected that he was engaged in criminal activity and therefore were likely to have taped his conversations. Furthermore, even if such records did exist, it seems unlikely that they would be exculpatory; NMEC telephone records indicate that appellant made daily collect calls to NMEC and several witnesses testified that appellant stayed active in NMEC's affairs while he was in prison.
 
 
 27
 Likewise, the existence of Federal Express receipts that would show that the three mailings for which appellant was convicted were not sent through the Post Office is entirely speculative. And even if appellant were able to demonstrate that such receipts did exist at one time, demonstrating prejudice would require showing the receipts were destroyed some time after the investigation began. Because of the highly speculative nature of appellant's claims of prejudice, we do not find that the district court's refusal to dismiss the indictment was clear error.[3]
 
 V
 
 28
 Appellant also argues that the district court erred both by allowing appellant's co-defendants to testify to their guilty pleas and by refusing to admit evidence that the victims of appellant's scheme lost no money. We review a district court's evidentiary rulings for abuse of discretion. United States v. Soulard, 730 F.2d 1292, 1296 (9th Cir.1984). We find no abuse here.
 
 
 29
 * Among the witnesses who testified for the government at trial were three individuals who were part of the NMEC fraud and who had pled guilty to charges arising out of that fraud. These witnesses testified to their guilty pleas in response to the government's questions on direct examination. Appellant argues that the court abused its discretion by allowing this testimony because the testimony "vouched" for the witnesses' credibility and because it "tended to show" that appellant was guilty of the charges against him. Neither the facts nor the law support appellant's claim.
 
 
 30
 In United States v. Halbert, 640 F.2d 1000, 1004 (9th Cir.1981) we held that "under proper instruction, evidence of a guilty plea may be elicited by the prosecutor on direct examination so that the jury may assess the credibility of the witnesses the government asks them to believe." The purpose of such evidence is to "support the reasonableness of the witness's claim to firsthand knowledge." Id. at 1005. The rule in Halbert is distinct from the rule that prohibits a party from offering evidence to vouch for the truthfulness of a witness. See United States v. Brooklier, 685 F.2d 1208, 1218-19 (9th Cir.1982), cert. denied, 459 U.S. 1206 (1983). Halbert plainly supports the court's decision to allow the testimony.
 
 
 31
 There is ample evidence in the record that the testimony at issue was offered for the proper purpose and that the court painstakingly instructed the jury on how to consider the testimony. At a pre-trial hearing outside the presence of the jury, the prosecutor indicated that he wanted to offer the evidence on the question of credibility, pursuant to Halbert, and the court agreed to admit the evidence based on that representation. The record shows that in his examination, the prosecutor inquired no further than the fact of the guilty plea. And the judge gave the jury a cautionary instruction each time a witness testified to his or her guilty plea and then again at the end of the trial. Thus it was perfectly proper for the judge to admit the pleas.
 
 
 32
 The prosecutor's comment outside the presence of the jury, that the statements were also necessary to dispel the impression "that Mr. Feldman is the only malfeasor in this whole scheme who has been prosecuted[,] [t]hat he's been singled out," was harmless. Because the jury never heard the comment, it could not have affected its consideration of the evidence. And in any case, the remark in no way suggests that the evidence was introduced to prove appellant's guilt.
 
 B
 
 33
 Appellant also argues that the court erred by excluding evidence that the victims of appellant's scheme suffered no monetary loss. He claims to have been prejudiced by the absence of this evidence because "it is hard to believe" that any jury that was not aware that the investors recouped their money "would not be motivated to find the defendant guilty of 'something,' in light of the enormity of the alleged scheme." [Blue Brief at 33]. Appellant cites to no cases, and neither the facts nor the law support his position.
 
 
 34
 In the first place, appellant fails to cite to any place in the record in which the court excluded evidence of the Bank of America settlement--the reason the investors lost no money. Instead, he cites to the court's rejection of his argument that the indictment should be dismissed on the grounds that the mail fraud statute does not apply to schemes that result in no monetary loss.[4] Though the prosecutor did move to exclude evidence of the Bank America settlement, appellant's attorney informed the court that he had no intention of introducing that evidence and the court refused to rule on that motion.
 
 
 35
 But even if it had excluded the evidence, it would not have violated its discretion. Under Federal Rule of Evidence 402, evidence that is not relevant is not admissible. And a district court has broad discretion to evaluate the relevancy of any piece of evidence. United States v. Lopez, 803 F.2d 969, 972 (9th Cir.1986), cert. denied, 481 U.S. 1030 (1987). Evidence that the victims of this fraud suffered no monetary loss is simply irrelevant to a mail fraud prosecution because monetary loss is not an element of the crime. Telink, 910 F.2d at 598-600. On the other hand, the prejudice appellant claims to have suffered because of the exclusion of this evidence is so speculative as to be absurd.
 
 VI
 
 36
 Finally, we address the court's restitution order. The court ordered appellant to pay restitution to Bank of America for the full $70,700,000 that it paid to the victims of the fraud. There is no dispute between the parties that the order requires appellant to pay restitution for losses arising from the entire scheme to defraud, rather than just those losses attributable to each count for which appellant was convicted. It consequently violates the Supreme Court's decision in Hughey v. United States, 495 U.S. 411 (1990), and our most recent decision in Sharp, 941 F.2d 811.[5]
 
 
 37
 For the reasons set forth above, appellant's conviction is AFFIRMED and his sentence is
 
 
 38
 VACATED and REMANDED for resentencing consistent with our opinion in Sharp.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In his Opening Brief, appellant also argues, for the same reasons, that he was prejudiced by the loss of logs of the visitors he received while at Boran. The government responds that in fact the visitor logs have never been destroyed and are available at a storage facility. Appellant concedes the point in his Reply Brief
 
 
 [2]
 The government alleges that the latter of these two arguments has been raised for the first time on appeal and is thus waived. It seems that the government is correct that appellant's argument about the receipts is new. But it is nevertheless within our discretion to review appellant's claim. It matters not that appellant failed to argue that the loss of the receipts is one of the reasons he suffered prejudice. It only matters that appellant raised the "ultimate" issue of prejudice from loss of evidence caused by government delay. See Schoenberg v. Exportadora de Sal, S.A., 930 F.2d 777 (9th Cir.1991). In any case, it is within our discretion to review matters raised for the first time on appeal where, as here, the issue is one that does not require us to rely on the record. See In re Wind Power Systems, Inc., 841 F.2d 288, 290 n. 1 (9th Cir.1988). In this instance we feel competent to exercise our discretion
 
 
 [3]
 Because appellant has failed to show prejudice, we need not consider the reasons for the delay. But we note that even had we found prejudice, appellant's bald assertion that the government delayed "in order to gain a tactical advantage from developments in the civil proceedings" would not suffice to demonstrate a due process violation. Appellant offers no facts to support his allegation that the government's reasons for delay were unjust. That appellant is engaging in pure conjecture is demonstrated by the fact that his reply brief abandons the theory of delay offered in his opening brief in favor of new theories, once again without factual support
 
 
 [4]
 Appellant based his argument--that the lack of monetary loss precludes application of the mail fraud statute--on an interpretation of McNally v. United States, 483 U.S. 350 (1987), which held that the mail fraud statute does not apply to "intangible rights." This circuit has previously rejected that interpretation of McNally and appellant does not raise it here. See Telink, 910 F.2d at 599-600
 
 
 [5]
 Appellant also challenges the district court's appointment of a receiver to manage the payment of restitution. Because the district court's reconsideration of its restitution order may cause it to reevaluate its appointment of a receiver, we decline to rule at this time on appellant's claim that the appointment of the receiver was improper; that claim is not yet ripe for review