**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Sant R. PALLAN, Defendant-Appellant.**

No. 77–2646.

United States Court of Appeals, Ninth Circuit.

March 6, 1978.

Harry L. Hellerstein (argued), San Francisco, Cal., for defendant-appellant.

Gary K. Shelton (argued), San Francisco, Cal., for plaintiff-appellee.

Before, WALLACE and HUG, Circuit Judges, and GRANT,* District Judge.

WALLACE, Circuit Judge:

Pallan appeals from his conviction on one count of attempted income tax evasion, 26 U.S.C. § 7201, and eleven counts of making fraudulent income tax returns, 26 U.S.C. § 7206(1). Pallan's central contention is that he was denied due process of law by a delay of approximately five years between the criminal acts and the return of the indictment. We agree with the district judge that under the particular facts of this case, the preindictment delay occasioned no violation of Fifth Amendment rights. We therefore affirm.

I

In January 1973, an IRS agent commenced a tax examination of Air Industrial Research, Inc. (AIR) of which Pallan was a corporate officer. In August 1973 the investigating agent referred the AIR audit to his superior for an investigation of potential fraud. During the period between October 2, 1973 and mid-April 1975 Special Agent Young investigated the 1971 tax returns of AIR, Pallan, and various related corporations and partnerships. At the conclusion of his examination, Young recommended the criminal prosecution of Pallan. The 18-month duration of Young's investigation was mandated by the complex nature of the financial transactions and the confused state of the records of the various entities involved. Young's recommendation of criminal prosecution was supported by seven volumes of documentary evidence.

On April 21, 1975, the District Director of Internal Revenue transmitted the report of Special Agent Young, together with the supporting documentary material, to the Western Regional Counsel of the IRS recommending prosecution of Pallan. The purpose of the Regional Counsel's review was to determine whether there was sufficient evidence to prove a violation and to offer the potential defendant an opportunity to present exculpatory matter.

On August 21, 1975 the Regional Counsel transmitted the case report and files to the Assistant Attorney General in charge of the Tax Division of the Department of Justice and recommended prosecution of Pallan. Attorneys in the Criminal Section of the Tax Division reviewed the case from August 1975 to February 11, 1976 to determine if prosecution was warranted. On that date the Chief of the Criminal Section forwarded the case to the U.S. Attorney for the Northern District of California and requested that the case be presented to the grand jury.

On February 13, 1976, the case was received by the Assistant U.S. Attorney who was to be responsible for its prosecution. Because of administrative duties and the time demands of other cases, the prosecutor did not review the case until June 1976. At this time, he learned that Pallan was scheduled to go to trial in state court in July 1976. The Assistant U.S. Attorney therefore determined to postpone presenting the charges to the grand jury until the conclusion of the state trial.

In his affidavit to the district court in opposition to Pallan's motion to dismiss, the prosecutor asserts that his sole reason for deferring the presentation to the grand jury was to spare Pallan from being forced to defend himself in both state and federal

* Honorable Robert A. Grant, United States District Judge, for the Northern District of Indiana, sitting by designation.

prosecutions simultaneously. Pallan argues, however, that the prosecutor was motivated by the desire to obtain the tactical advantage of being able to introduce the potential state court conviction for impeachment purposes.

On November 19, 1976, Pallan was convicted in the state proceeding. In early December the federal charges were presented to the grand jury and the indictment was returned on December 15, 1976.

Pallan contends that the delay between the date of the latest criminal act, April 1972, and the date of the indictment, December 1976, violates his Fifth Amendment right to due process. In order to prevent this asserted constitutional violation, he argues, the case must be dismissed. We disagree.

## II

In recent years, considerable attention has been directed to the fact that our criminal justice system is laboring under an ever-burgeoning case load. *See, e. g.,* Godbold, *Speedy Trial—Major Surgery for a National Ill,* 24 Ala.L.Rev. 265 (1972). In response, Congress and the Judiciary have attempted to fashion constitutional and statutory means of preventing criminal defendants from being subjected to oppressive delays between arrest and trial. *See, e. g., Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (judicial application of the Speedy Trial Provision of the Sixth Amendment); 18 U.S.C. §§ 3161–74 (Speedy Trial Act of 1974); and Fed.R. Crim.P. 48(b) (dismissal for unnecessary delay). It is clear, however, that these rules apply only to situations involving *post*-arrest delay. *See United States v. Lovasco,* 431 U.S. 783, 788–89, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) and *United States v. Marion,* 404 U.S. 307, 320–21, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) (Speedy Trial Provision of Sixth Amendment applies only to post-arrest delays) and *United States v. Marion, supra,* 404 U.S. at 319, 92 S.Ct. 455 (Fed.R.Crim.P. 48(b) applies only to post-arrest delays).

This distinction between pre- and post-arrest delay is a recognition of the fact that the post-arrest delay is inherently more capable of abuse and oppressive prejudice to the criminal defendant. For example, the Supreme Court has noted that the period following arrest and accusation has a greater tendency to "interfere with the defendant's liberty, . . . disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." *United States v. Marion, supra,* 404 U.S. at 320, 92 S.Ct. at 463.

Certainly, these concomitants of the post-arrest or post-accusation period are present to a much lesser degree in the pre-arrest and accusation period. Accordingly, the Court has consistently held that

"the applicable statute of limitations . . . is . . . the primary guarantee against bringing overly stale criminal charges" [quoting *United States v. Ewell,* 383 U.S. 116, 122 [, 86 S.Ct. 773, 15 L.Ed.2d 627 [(1966)]. Such statutes represent legislative assessments of relative interests of the State and the defendant in administering and receiving justice; they "are made for the repose of society and the protection of those who may [during the limitation] . . . have lost their means of defence." *Public Schools v. Walker,* 9 Wall. (76 U.S.) 282, 288 [, 19 L.Ed. 576] (1870). These statutes provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced. *Id.* at 322, 92 S.Ct. at 464. *See also United States v. Lovasco, supra,* 431 U.S. at 789, 97 S.Ct. 2044.

■ Of course, the federal courts have recognized that in addition to the applicable statute of limitations, the Due Process Clause may bar prosecution in some cases of preindictment delay. The Court has cautioned, however, "that the Due Process Clause has a *limited* role to play in protecting against oppressive [preindictment] delay." *United States v. Lovasco, supra,* 431 U.S. at 789, 97 S.Ct. at 2048 (emphasis

added). Thus, in order to block a prosecution on the basis of preindictment delay, the defendant must first show actual, nonspeculative prejudice resulting from the delay. *Id.* at 790, 97 S.Ct. 2044; *United States v. Mays,* 549 F.2d 670, 677 (9th Cir. 1977). Once this showing is made, "the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *United States v. Lovasco, supra,* 431 U.S. at 790, 97 S.Ct. at 2049.

It is precisely in this aspect of the analysis—judging the reasons for the delay—that the "limited" nature of the due process inquiry is apparent.

> [T]he Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment. Judges are not free, in defining "due process," to impose on law enforcement officials our "personal and private notions" of fairness and to "disregard the limits that bind judges in their judicial function." *Rochin v. California,* 342 U.S. 165, 170 [, 72 S.Ct. 205, 209, 96 L.Ed. 183] (1952). Our task is more circumscribed. We are to determine only whether the actions complained of . . violate those "fundamental conceptions of justice which lie at the base of our civil and political institutions," *Mooney v. Holohan,* 294 U.S. 103, 112 [, 55 S.Ct. 340, 342, 79 L.Ed. 791] (1935), and which define "the community's sense of fair play and decency," *Rochin v. California, supra* [, 342 U.S.] at 173 [, 72 S.Ct. [205] at 210].

*Id.*

The difficulty of our task of evaluating the reasons for the delay is enhanced by the fact that there are a great many potential motivations for a prosecutor's delay in presenting his case to the grand jury, many of which are legitimate and salutory. *See generally* Amsterdam, *Speedy Criminal Trials: Rights and Remedies,* 27 Stan.L.Rev. 525, 527–28 (1975). Most significantly, the pre-accusation period affords prosecutors and investigators an opportunity to filter out many cases which should not be brought to trial. For example, in fiscal 1976, United States Attorneys received some 171,518 criminal matters. Of those, only 23,735 resulted in proceedings before a grand jury. [1976] Att'y Gen.Ann.Rep. 26. Thus, any rule designed to reduce drastically the period between referral to the prosecutor and formal accusation "would increase the likelihood of unwarranted charges being filed, . . . [and] would cause scarce resources to be consumed on cases that prove to be insubstantial . . ." *United States v. Lovasco, supra,* 431 U.S. at 791–92, 97 S.Ct. at 2049–50.

■ In light of the foregoing discussion, we conclude that the district judge did not err in refusing to grant Pallan's motion to dismiss. Initially, we have serious doubts as to whether Pallan has made an adequate showing of actual, non-speculative prejudice caused by the delay. Pallan primarily points to the government's use for impeachment purposes of his state court convictions as prejudice caused by the preindictment delay. In one sense, any piece of probative, admissible evidence acquired by the prosecutor serves to "prejudice" the defendant's case. Manifestly, this is *not* the type of prejudice that due process principles seek to prevent. On the contrary, due process does not prevent the prosecutor from delaying submission to the grand jury in order to acquire additional probative evidence, *id.* at 796, 97 S.Ct. 2044, but rather, due process prevents delays which result in unfair and unnecessary detriment to the defendant's ability to defend himself. *See United States v. Barket,* 530 F.2d 189, 193 (8th Cir.), *cert. denied,* 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 282 (1976). Judged in this light, we cannot agree that by awaiting termination of the state proceedings, Pallan suffered the type of prejudice we are concerned with here. While the impeachment use of the state convictions may have somewhat enhanced the government's case, it did not unfairly impair Pallan's ability to defend himself.

■ Pallan also attempts to show actual prejudice by asserting that the challenged delay resulted in the unavailability of cer-

tain witnesses and dimmed memories. "Protection against prejudice from lost testimony, like lost documents and faded memories, generally falls solely within the ambit of the statute of limitations." 61 Minn.L. Rev. 509, 517 (1977). *See United States v. Marion, supra,* 404 U.S. at 321–22, 92 S.Ct. 455. Thus, whether an assertion of lost testimony and dimmed memories is an adequate showing of the type of prejudice necessary to establish a due process violation perhaps remains an open question. In any event, we have expressly held that a defendant's proof of prejudice

> must be definite and not speculative: "The assertion that a missing witness might have been useful does not show the 'actual prejudice' required by *Marion.*"

*United States v. Mays, supra,* 549 F.2d at 677, *quoting United States v. Galardi,* 476 F.2d 1072, 1075 (9th Cir.), *cert. denied,* 414 U.S. 839, 94 S.Ct. 90, 38 L.Ed.2d 75 (1973). Our review of the record leads us to conclude that Pallan's allegations of lost testimony do not concretely demonstrate actual prejudice.

First, Pallan asserts that "[o]ne witness that may have been able to help [him] has died, one witness is presently out of the jurisdiction of this court in Canada." The speculative nature of this allegation of actual prejudice is self-evident. Pallan also claims that the preindictment delay resulted in the unavailability of certain witnesses who would have testified essentially that Pallan "knew nothing about tax matters" and entrusted the handling of his tax concerns to others. Initially, we doubt that one may meaningfully testify to another individual's lack of substantive knowledge. In any event, the fact that Pallan knew little of federal tax law and that he entrusted his tax affairs to others does not necessarily rebut the conclusion that Pallan knowingly and willfully attempted to evade federal income tax. While this testimony may have been of some benefit to Pallan, he has not made a non-speculative demonstration that its loss has actually impaired his ability meaningfully to defend himself.

### III

Pallan raises two additional contentions, neither of which is meritorious. First, Pallan asserts that the district judge erred in failing to instruct the jury on specific intent, an element of both statutes, and in failing to instruct on the defense theory.

As Pallan contends, "willfully" as used in 26 U.S.C. § 7201 and 26 U.S.C. § 7206(1) requires a voluntary, intentional violation of a known legal duty. *United States v. Pomponio,* 429 U.S. 10, 12, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976); *United States v. Bishop,* 412 U.S. 346, 359–60, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973). Although the district judge did express the belief that specific intent was not required to establish the section 7206 violation, that remark was made out of the jury's presence. More importantly, the record reveals that the judge instructed the jury that "[t]he crimes charged in this case are serious crimes which require proof of specific intent before the defendant can be convicted of any of them." In other instructions the judge adequately defined "specific intent" as required by *United States v. Pomponio, supra,* 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12.

Pallan's argument that the jury was not properly instructed on the defense theory that Pallan's reliance upon his tax advisor demonstrates his lack of specific intent is also without merit. Of course, "a defendant has no right to have a jury instructed precisely in the language he requests," *Charron v. United States,* 412 F.2d 657, 660 (9th Cir. 1969), and "considering the instructions as a whole, [we believe] the jury was fairly instructed on" the defense theory. *United States v. Pena-Ozuna,* 511 F.2d 1106, 1108 (9th Cir.), *cert. denied,* 423 U.S. 850, 96 S.Ct. 92, 46 L.Ed.2d 73 (1975).

Finally, Pallan contends that the district court erred in allowing the prosecutor to introduce evidence of Pallan's state court convictions for impeachment purposes. This evidence falls squarely within the strictures of Fed.R.Evid. 609 and was therefore properly admitted.

AFFIRMED.