995 F.2d 234
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dalegor W. SUCHECKI, Defendant-Appellant.
 No. 91-10127.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 12, 1993.*
Decided June 2, 1993.
 
 Before: HUG, GOODWIN, and FLETCHER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Appellant Dalegor W. Suchecki timely appeals his 18 U.S.C. § 1001 (1988) convictions for making false statements in connection with two applications for medical benefits. He contends that (1) a discovery motion was improperly denied, (2) there was insufficient evidence to convict him of violating § 1001, (3) the district court's jury instructions misstated the elements of a § 1001 violation, and (4) the indictment was impermissibly multiplicitous. We have jurisdiction under 28 U.S.C. § 1291 (1988). We reject those contentions and affirm.
 
 
 3
 Suchecki, a veteran honorably discharged from the United States Army in 1955, occasionally sought treatment for diabetes--and vascular disease-related ailments at the Veteran's Administration hospital in San Francisco ("VASF" or "hospital"). On July 29, 1987, Suchecki sought admission to VASF for treatment of an infected toe.
 
 
 4
 VASF, like other Veteran's Administration hospitals, required patients to complete and submit a "Form 10-10" prior to admission. The hospital used the information provided on Form 10-10 to determine medical benefit eligibility, and to bill the veteran's own insurance carrier, if any. Suchecki's Form 10-10 of July 29, 1987 recites that he claimed to be a "fund raiser" employed by an "unknown" employer, and that he was not covered by any type of health insurance. In fact, as stipulated at trial, Suchecki was employed full-time by the United States Postal Service, and had been since 1969. Additionally, and again as stipulated at trial, Suchecki had health insurance coverage through his enrollment in the American Postal Workers' Union Health Care Plan; that coverage was effective as of January 12, 1980.
 
 
 5
 On October 28, 1987, Suchecki again sought treatment at VASF. Suchecki again claimed, on a Form 10-10, to be unemployed and uninsured. As was the case with the recitations on the July 29, 1987 form, these statements were false.
 
 
 6
 Suchecki gave a three-page statement to investigators on November 24, 1987, a statement admitted into evidence at trial. In it he acknowledged having
 
 
 7
 been shown [a Form 10-10] dated July 29, 1987. I do recognize that the signature is my signature. A male helped me complete the forms. I thought he asked me if I was employed and I thought I responded in the affirmative, that I was employed for the Postal Service. I thought he asked me if I had health insurance and I thought I told him that I had APWU health insurance.
 
 
 8
 ER at 13.
 
 
 9
 After a three-day jury trial, Suchecki was sentenced to three years' probation and fined $7500[1] for two § 1001 convictions.
 
 
 10
 Suchecki first argues that his due process rights were violated by the lengthy delay between the time he made the two false statements made July 29, 1987 and October 28, 1987 and the time of indictment on February 14, 1990. He contends that his motion for supplemental discovery concerning the pre-indictment delay was improperly denied by the district court.[2]
 
 
 11
 We review a district court's discovery rulings for abuse of discretion. United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir.1990). We similarly review the denial of a motion to dismiss for pre-indictment delay for abuse of discretion. United States v. Sherlock, 962 F.2d 1349, 1354 (9th Cir.), cert. denied, 113 S.Ct. 419 (1992).
 
 
 12
 Pre-indictment delay is a violation of a defendant's due process rights only "when it causes the defendant actual prejudice and when the 'length of the delay, when balanced against the government's reasons for it, offends those "fundamental conceptions of justice which lie at the base of our civil and political institutions." ' " United States v. Turner, 926 F.2d 883, 889 (9th Cir.) (quoting United States v. Valentine, 783 F.2d 1413, 1417 (9th Cir.1986) (quoting United States v. Moran, 759 F.2d 777, 782 (9th Cir.1985), cert. denied, 474 U.S. 1102 (1986))), cert. denied, 112 S.Ct. 103 (1991).
 
 
 13
 As the government points out, Suchecki's written memorandum in support of his motion for supplemental discovery did not claim prejudice because of the death of a witness. That fact came to light only when Suchecki's counsel, responding to the district judge's inquiry, advised the court at the hearing on the motion that "at least one witness ... has died, I have been told by the U.S. attorney." RT 8/27/90 at 49. In fact, David C. Foulk, the medical administrative assistant at VASF who helped Suchecki fill out his June 29, 1987 Form 10-10, had passed away prior to trial.
 
 
 14
 The district court, noting the absence of any declaration as to how Suchecki may have been prejudiced, informed counsel that it
 
 
 15
 need[ed] to know by declaration under penalty of perjury exactly what witnesses could have been called and now can't be called and who would have testified in a manner--likely have been able to testify in a manner that would exculpate the client ... and any other bases on which you believe that your client would be prejudiced. But it has to be done by way of declaration, not just amorphous argument.
 
 
 16
 Id. at 50.
 
 
 17
 It is Suchecki's "heavy burden to prove that pre-indictment delay caused actual prejudice." United States v. Butz, 982 F.2d 1378, 1380 (9th Cir.1993) (citing United States v. Gonzalez-Sandoval, 894 F.2d 1043, 1050 (9th Cir.1990)). Any such proof must be "definite and not speculative." Id. These requirements are stringent and stringently enforced because " 'the Due Process Clause has [only] a limited role to play in protecting against oppressive [preindictment] delay.' " United States v. Pallan, 571 F.2d 497, 499 (9th Cir.) (quoting United States v. Lovasco, 431 U.S. 783, 789 (1977)), cert. denied, 436 U.S. 911 (1978). A recent Ninth Circuit decision found only two cases in the last seventeen years in which any circuit court of appeals upheld a pre-indictment delay due process claim. United States v. Huntley, 976 F.2d 1287, 1290 (9th Cir.1992)
 
 
 18
 Suchecki fails to show actual prejudice because he makes no showing as to what Foulkes might have testified to. See Butz, 982 F.2d at 1380 (citing United States v. Galardi, 476 F.2d 1072, 1075 (9th Cir.) (actual prejudice not shown by "[t]he assertion that a missing witness might have been useful"), certs. denied, 414 U.S. 839, 856 (1973)); see also Sherlock, 962 F.2d at 1354 (no actual prejudice from three-year delay, witnesses' dimmed memories, and loss of physical evidence); Moran, 759 F.2d at 782-83 ("serious doubts" about actual prejudice from three-year pre-indictment delay and death of two witnesses); Pallan, 571 F.2d at 499-501 (no actual prejudice from nearly five-year delay and death of witness).
 
 
 19
 We reject Suchecki's pre-indictment delay argument. We also hold that the district court's decision to deny the motion for supplemental discovery was not an abuse of discretion since Suchecki was unable to show why his request was anything more than mere curiosity.
 
 
 20
 Suchecki also argues that the government failed to present sufficient evidence to convict him of violating 18 U.S.C. § 1001, and that his motion for a judgment of acquittal, raised at the close of the government's case and renewed at the close of the defense case, should have been granted. If "any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt," there was sufficient evidence to sustain the verdict. United States v. Terry, 911 F.2d 272, 278 (9th Cir.1990). We examine the evidence and all reasonable inferences which may be drawn from it in the light most favorable to the government. Id.
 
 
 21
 Suchecki argues that the government's evidence was legally insufficient to establish beyond a reasonable doubt that he knowingly and wilfully made false statements to the Veteran's Administration Hospital. Section 1001's plain language requires a "knowing[ ] and willful[ ]" false statement,[3] and a recent Ninth Circuit case lists five "essential" elements required to sustain a § 1001 conviction: "a statement, falsity, materiality, specific intent, and agency jurisdiction." United States v. Boone, 951 F.2d 1526, 1544 (9th Cir.1991) (emphasis added).
 
 
 22
 Boone, however, is of little assistance in defining what "specific intent" means in the § 1001 context. The government correctly cites to United States v. Carrier, 654 F.2d 559 (9th Cir.1981), as setting forth the relevant interpretive framework:
 
 
 23
 To willfully make a false statement under § 1001, a defendant must have "the specific intent of 'bringing about' the forbidden act." However it is not necessary that the government prove that the appellant in fact had an evil intent. The word "willfull" means no more than that the forbidden act is done "deliberately and with knowledge."
 
 
 24
 Id. at 561 (citations omitted); see also United States v. Vaughn, 797 F.2d 1485, 1490 (9th Cir.1986) ("the statement must be made intentionally and with the knowledge that it is false") (citing Carrier, 654 F.2d at 561).
 
 
 25
 Here, the evidence was sufficient for a reasonable juror to conclude that Suchecki made both the July 29, 1987 and October 28, 1987 statements "intentionally and with the knowledge that [they were] false." Suchecki admitted to an investigator that he completed the July 29 Form 10-10 with the assistance of a VASF employee. He signed the Form,[4] and signed a "financial worksheet" also dated July 29, 1987 that purported to show that he had no assets. Handwritten changes to certain answers on Form 10-10, the financial disclosure form, and a "supplemental data" form suggest that Suchecki reiterated his false statements to a VASF employee. The evidence was sufficient to sustain Suchecki's convictions on Counts I and II.
 
 
 26
 Suchecki contends that the district court erred in failing to give the jury a specific intent instruction. "Whether a jury instruction misstates elements of a statutory crime is a question of law reviewed de novo." United States v. Johnson, 956 F.2d 197, 199 (9th Cir.1992).
 
 The court instructed the jury as follows:
 
 27
 In order for the defendant to be found guilty of violating section 1001 o[f] title 18 U.S. Code the government must prove each of the following elements beyond a reasonable doubt:
 
 
 28
 First, the defendant made a false statement or used a writing which contained a false statement in a matter within the jurisdiction of the Veterans Administration.
 
 
 29
 Second, the defendant knew that the statement was untrue.
 
 
 30
 Third, the statement was material to the Veterans Administration's activities or its decisions.
 
 
 31
 RT 11/6/90 at 52. The court further instructed the jury that "[a] statement is false or f[i]ctitious if untrue when made and then known to be untrue by the person making it or causing it to be made." Id. at 54. It also gave the following instruction: "The words knowingly and willfully as those terms have been used from time to time in these instructions mean that the act was done voluntarily and intentionally and not because of mistake or accident." Id.
 
 
 32
 These instructions accurately conveyed the essence of the Carrier and Vaughn standard, and fairly and adequately covered the intent issue.
 
 
 33
 Finally, Suchecki argues that the indictment is multiplicitous because Counts I and II are based on "identical violations" of 18 U.S.C. § 1001. We review de novo to determine if the same false statement has been impermissibly charged in multiple counts of an indictment. United States v. Mayberry, 913 F.2d 719, 724 (9th Cir.1990).
 
 
 34
 As the government notes, the decision in United States v. Olsowy, 836 F.2d 439 (9th Cir.1987), cert. denied, 485 U.S. 991 (1988), sets forth a two-part test: was Suchecki asked the same question that was answered the same way; if so, did the "later false statements further impair[ ] the operations of the government." United States v. Salas-Camacho, 859 F.2d 788, 791 (9th Cir.1988).
 
 
 35
 Here, as in Salas-Camacho, the appellant made the second false statement to a different official. See id. Further, the government sustained additional monetary costs for additional medical treatment of Suchecki because Suchecki continued to deny that he was employed and had health insurance. Thus, although Suchecki meets the first part of the Olsowy test (the VASF medical administrative assistants asked the same questions on both July 29 and October 28, and Suchecki gave the same answers), his repeated false statements resulted in additional impairment such that it was permissible for the government to charge each false statement separately. We find no multiplicity problem.
 
 
 36
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument pursuant to Federal Rule of Appellate Procedure 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The government collected reimbursement of $38,845.00 from Suchecki's medical insurance carrier for services rendered at VASF on July 29, 1987 and October 28, 1987
 
 
 [2]
 The case was originally assigned to Judge Marilyn H. Patel. ER 27 (docket entry # 1). It was reassigned on November 2, 1990 to Judge David A. Ezra, visiting from the District of Hawaii. Id. at 31 (docket entry # 43). Judge Patel ruled on the discovery motion
 
 
 [3]
 In full, 18 U.S.C. § 1001 provides that
 Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.
 18 U.S.C. § 1001.
 
 
 [4]
 Immediately beneath the signature line, the following warning appears on Form 10-10: "WARNING: If you knowingly make a false statement of any material fact in or in connection with this application, you are subject to prosecution in a U.S. Court." SER at 2