78 F.3d 595
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellant,
v.
Richard BURNS (1), David Watt (2), and Joyce C. Burns (3),
Defendants-Appellees.
 No. 95-50055.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 20, 1995.
Decided March 8, 1996.
 
 1
 Before: POOLE, O'SCANNLAIN, Circuit Judges, and MARSH, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 The United States appeals the district court's dismissal of the indictment against Richard Burns, Joyce Burns, and David Watt ("defendants"). The district court found that the eight-year preindictment delay in this case violated due process. We REVERSE.
 
 
 4
 On November 5, 1993, defendants and Rocco Fabiano were indicted on 31 counts including conspiracy, bank fraud, bank bribery, money laundering and false statements on tax returns. The charges all relate to the defendants' involvement in the operation of Far Western Bank. Mr. Fabiano was not charged in any of the dismissed counts.
 
 
 5
 Defendants were shareholders of Far Western. Joyce Burns and David Watt served on the board of directors. Defendants allegedly enacted a business plan in 1986 to make high risk automobile loans to individuals with poor credit histories. The defendants also entered a limited partnership, RSIA, Limited, with Roger Steele, sole owner of RSIA, Inc. Defendants and Roger Steele agreed that RSIA, Inc. would provide insurance and service contracts for automobiles financed by the bank. RSIA, Inc.'s distributable income was divided among the RSIA, Limited partners. The defendants allegedly deceived bank regulators about their control and financial interests in RSIA, Inc. and other entities that benefited from the bank's lending activities.
 
 
 6
 The FDIC and California State Banking Department ("CSBD") conducted a joint examination of the bank in Fall, 1987. During the investigation, the regulators became concerned about the poor quality and large quantity of automobile loans. The regulators also began to uncover the connection between the bank's lending practices and the commission income being generated by RSIA, Inc. In February 1988, the FDIC made a criminal referral to the FBI in Los Angeles. The investigation was closed in January 1989, and no charges were filed.
 
 
 7
 In December 1989, a grand jury began investigating Imperial Bank. In December 1990, the investigation began to focus on the relationship between Imperial and Far Western. Imperial had purchased numerous automobile loans from Far Western. The grand jury returned an indictment against the defendants on November 5, 1993.
 
 
 8
 Defendants moved to dismiss the indictment due to, among other issues, preindictment delay. On September 6, 1994, the district court dismissed Counts 1, 2, 18-26, 29 and 30. The government filed a motion to reconsider. On January 6, 1995, the district court issued a written order denying the motion to reconsider, except for the reinstatement of Count 30.
 
 
 9
 The government contends that the district court erred by finding that the defendants (1) were entitled to a presumption of prejudice from the preindictment delay and (2) suffered actual prejudice. The government also contends that the district court erroneously found that the preindictment delay violated due process.
 
 
 10
 We review a district court's decision to dismiss an indictment for preindictment delay for abuse of discretion. United States v. Huntley, 976 F.2d 1287, 1289 (9th Cir.1992). A finding of prejudice is reviewed under the clearly erroneous standard, but this court "must keep the defendant's heavy burden in mind." Id.
 
 
 11
 Preindictment delay violates due process only if the defendant proves (1) actual, nonspeculative prejudice from the delay, and (2) the length of the delay, when balanced against the reason for it, offends fundamental conceptions of justice. United States v. Dudden, 65 F.3d 1461, 1466 (9th Cir.1995).
 
 
 12
 The district court erred by finding presumptive prejudice under Doggett v. United States, 505 U.S. 647, 112 S.Ct. 2686 (1992). In Doggett, the Supreme Court held a defendant's Sixth Amendment rights had been violated by an 8 1/2 year postindictment delay after ruling that the defendant was entitled to a presumption of prejudice from the delay. Doggett, however, is inapplicable to Fifth Amendment preindictment cases. United States v. Bischel, 61 F.3d 1429, 1436 (9th Cir.1995) (requiring defendant to prove actual prejudice from preindictment delay).
 
 
 13
 The district court found that even if Doggett does not authorize a finding of presumptive prejudice, the indictments should still be dismissed because the defendants showed actual prejudice as a result of the government's delay. The district court found that the defendants suffered actual prejudice from the death of two witnesses, the faded memories of other witness, and the loss of various loan files.
 
 
 14
 "In demonstrating actual prejudice, the defendant's burden is a heavy one: the proof must be definite and not speculative, and the defendant must demonstrate how the loss of a witness and/or evidence is prejudicial to his case." United States v. Talbot, 51 F.3d 183, 185 (9th Cir.1995). The mere assertion that a missing witness might have been useful does not establish actual prejudice. United States v. Mays, 549 F.2d 670, 677 (9th Cir.1977). The defendant must also show that the missing evidence is not available from other sources. United States v. Horowitz, 756 F.2d 1400, 1405 (9th Cir.), cert. denied, 474 U.S. 822 (1985).
 
 
 15
 The Fifth Amendment due process clause plays a limited role in protecting against oppressive delay. United States v. Pallan, 571 F.2d 497, 499 (9th Cir.1978). Protection against prejudice from lost testimony, like lost documents and faded memories, generally falls solely within the ambit of the statute of limitations. Id. at 500. This court has questioned whether such loss could ever constitute actual prejudice. United States v. Moran, 759 F.2d 777, 782 (9th Cir.1985), cert. denied, 474 U.S. 1102 (1986).
 
 
 16
 The defendants contend that they suffered prejudice from the preindictment delay because two witnesses died. The first decedent witness, John Sexton, the Regional Director of the FDIC, participated in the FDIC investigation of Far Western. The defendants contend that a letter from Mr. Sexton illustrates his knowledge and approval of the insurance commissions received by the defendants.
 
 
 17
 The district court found that defendants suffered actual, nonspeculative prejudice from the loss of this witness because he could have provided exculpatory evidence. The court also found that Mr. Sexton, as the author of the letter and the regional director of the FDIC, was in a more knowledgeable position than other FDIC regulators. Finally, the district court found that other regulators have no recollection of key events.
 
 
 18
 Again, defendants did not show that no alternatives were available. See Horowitz, 756 F.2d at 1405. The letter itself may be admissible. The district court did not consider that Sexton was not the regional director of the FDIC until August, 1989. It seems implausible that he would have unique knowledge of a business plan established three years earlier. Also, the district court found that Mr. Sexton could provide exculpatory evidence as to the FDIC's knowledge of RSIA, Limited partnership. However, the letter says nothing of the numerous other allegations of fraud included within counts 1 and 2. Thus, at best, it is only partially exculpatory and speculative. Such speculation is insufficient. Mays, 549 F.2d at 677.
 
 
 19
 The second deceased witness is Al Neubauer, one of the defendants' accountants. In his testimony before the grand jury, Mr. Neubauer stated that he believed it would have been illegal for the insurance commissions to flow back to Far Western instead of RSIA, Limited, as the regulators wanted. The district court found, therefore, that Mr. Neubauer would have helped the defendants.
 
 
 20
 The district court again did not consider whether this evidence was available from other sources. See Horowitz, 756 F.2d at 1405. For instance, Mr. Neubauer's grand jury testimony may be admissible or other accountants could offer similar testimony.
 
 
 21
 The defendants argued that they suffered prejudice because the memories of key witnesses had faded. The district court found that the memories of key witnesses were impaired in material areas by the delay. This finding was supported by depositions and grand jury testimony where witnesses repeatedly stated that they could not recall in response to the defendants' questions.
 
 
 22
 Even if this court accepts the district court's finding that the witnesses actually forgot relevant information due to the preindictment delay, there is nothing in the record to indicate how the witnesses would have testified had their memories not dimmed. The defendants offer only speculation. See Talbot, 51 F.3d at 185. Furthermore, the district court again failed to consider if alternative sources of evidence were available. See Horowitz, 756 F.2d at 1405.
 
 
 23
 The defendants contend that they were prejudiced by the loss of numerous documents. The majority of Far Western's loan files were sold or transferred and are no longer traceable. Only 1.5% of the loan files are still in the FDIC inventory. The defendants contend that while failed loan files have been preserved by the government, the safe loans, which were sold to other financial institutions, are not available for use during trial. They argue that this evidence would show that 90% of the loans were paying as agreed. Further, defendants argue that the lost files prevent them from adequately cross examining the bank regulators. The district court found that these missing files constitute a loss of exculpatory evidence which prejudiced the defendants.
 
 
 24
 The defendants did not prove that the files would show that the majority of loans were "safe." See Talbot, 51 F.3d at 185. They also did not show that no alternative sources of the evidence existed. See Horowitz, 756 F.2d at 1405. Furthermore, the missing loan files can be charged against the government's position.
 
 
 25
 Defendants also contend that they were prejudiced because the CSBD work papers were destroyed. These documents are destroyed in the ordinary course of business following an investigation. They argue that these records would confirm a difference of opinion between state and federal regulators. The district court agreed.
 
 
 26
 The defendants did not prove that these documents were lost because of the preindictment delay. They were destroyed in the ordinary course of business. The defendants also did not show that these documents would be helpful. They only speculate that the work papers would differ from the examiners' final reports and would reveal a difference of opinion between state and federal regulators. See Talbot, 51 F.3d at 185. Furthermore, even assuming this evidence was exculpatory, the district court did not consider alternative sources of the evidence. See Horowitz, 756 F.2d at 1405. The defendants did not show, for example, that the regulators themselves could not testify.
 
 
 27
 The district court found that the defendants suffered anxiety and lost opportunity from the government's extended investigation. This court has never found actual prejudice due to anxiety or lost opportunities caused by a preindictment delay. Even assuming such harm could prejudice the defendants sufficiently to violate their due process rights, nothing in the record shows that the defendants suffered any unique anxiety or lost opportunity. It is not enough to complain of anxiety that would be suffered by any person subject to a criminal investigation. See United States v. Tucker, 8 F.3d 673, 676 (9th Cir.1993), cert. denied, 114 S.Ct. 1230 (1994) (three-year delay in hearing an appeal.)
 
 
 28
 Because the defendants did not show actual, nonspeculative harm from the preindictment delay, the district court's finding of actual prejudice was clearly erroneous.
 
 
 29
 Having found actual prejudice, the district court then balanced the length of the delay and the extent of the prejudice suffered against the proffered reasons for the delay. Because we find that the district court's finding of actual prejudice was clearly erroneous, we need not reach the second prong of the test. Talbot, 51 F.3d at 185.
 
 
 30
 The district court also dismissed the money laundering charges since they were derivative of the dismissed fraud charges. Because we reinstate the bank fraud charges, the money laundering charges should also be reinstated since the district court never found that these charges themselves violated the defendants' due process rights.
 
 
 31
 For the above reasons, we reverse the district court's dismissal of the indictment.
 
 
 
 *
 The Honorable Malcolm F. Marsh, United States District Judge for the District of Oregon, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3